CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiff
Eve Nevada, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Eve Nevada, LLC,<br><br>Plaintiff,<br>vs.<br><br>Dietrich Riley et al.,<br><br>Defendants. | **Case No.: 1:20-cv-475-DKW-KJM (Copyright)**<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT COREY R. EVANS |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT COREY R. EVANS

1

**Table of Contents:**

Table of Authorities.................................................................................4

I.      Jurisdiction and Venue ................................................................8

II.     Defendant's Default Entered.........................................................8

III.    Factual Allegations......................................................................9

IV.     Argument...................................................................................12

        A.      Copyright Infringements Have Been Established .............12

        B.      Contributory Copyright Infringements Have Been Established.......13

        C.      DMCA Violations Have Been Established…………………………13

        D.      Default Judgment is Appropriate .......................................15

                1.  The Possibility of Prejudice to Plaintiff…………………………..16

                2. & 3. The Merits of Plaintiff's Substantive Claims and the Sufficiency

of the FAC………………………………………………………………17

                4. The Sum of Money at Stake in the Action…………………………18

                5.  The Possibility of a Dispute Concerning the Material Facts……...19

                6.  Whether the Default was Due to Excusable Neglect……………...19

                7.  The Policy Considerations………………………………………20

V.      Statutory Damages…....................................................................20

VI.     Plaintiff is Entitled to Injunctive Relief ..................................... 22

VII.    Plaintiff is Entitled to Attorney's Fees and Taxable Costs.............................25

    A.      The Degree of Success in the Litigation………...................................26

    B.      Deterrence………………….......................................................... 27

    C.      The Goals of the Copyright Act........................................................ 28

    D.      Objective Unreasonableness….......................................................... 28

    E.      Calculation of Attorney's Fees…………………………………………28

VIII.  Conclusion......................................................................................31

**Table of Authorities:**

***Statutes and Rules***

United States Copyright Act, 17 U.S.C. §§ 101 et. seq......................................... 8, 12

Digital Millennium Copyright Act, 17 U.S.C. 1201 §§ et. Seq………………... 8, 12

17 U.S.C. §§ 106(1), (3)…………………………………………………….. 10

17 U.S.C. § 410(c)…………………………………………………………... 12

17 U.S.C. § 502(a)............................................................................................. 22

17 U.S.C. § 503(b)............................................................................................. 22

17 U.S.C. § 504(c)............................................................................................. 21

17 U.S.C. § 505…………………………………………………………….... 25

17 U.S.C. § 512(a)............................................................................................. 10

17 U.S.C. § 1202................................................................................... 11, 14, 21

17 U.S.C. § 1202(a)(2)…………………………………………………….... 13, 15

17 U.S.C. § 1202(b)(2)-(3)…………………………………………………... 13-15

17 U.S.C. § 1202(c)…………………………………………………………. 14

17 U.S.C. § 1203(c)(3)(B)…………………………………………………... 21

28 U.S.C. § 1331................................................................................................ 8

28 U.S.C. § 1338(a) .......................................................................................... 8

28 U.S.C. §§ 1391(b) and (c)............................................................................ 8

28 U.S.C. § 1400(a) .......................................................................................... 8

28 U.S.C. § 1498 ..................................................................................... 22

Fed. R. Civ. P. 12(a)(1)(A).......................................................................... 9

Fed. R. Civ. P. 26 .......................................................................... 19, 24, 28

Fed. R. Civ. P. 55(a) ................................................................................... 9

Fed. R. Civ. P. 55(b)(2) ............................................................................. 15

*Cases*

*A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1019 (9th Cir. 2001)………. 13

*AF Holdings, LLC v. Does* 1–1058, 752 F.3d 990, 992 (D.C. Cir. 2014) …..……. 9

*Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997)…... 23

*City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992)………………………………………………………………….. 29

*Cobbler Nevada, LLC v. Anonymous Users of Popcorn Time: Does 1–11*, 2016 WL 4238639, at *3 (D. Or. Aug. 10, 2016)………………………………….. 26-27

*Cobbler Nevada, LLC v. Gonzales,* 901 F.3d 1142, 1144 (9th Cir. 2018)………... 17

*Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)………………………………………..……… 20

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015)……………………………………………………………………... 22

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017)……. 23-24

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)…………………... 22

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)…………………….... 16

*Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005)………………………………….. 24

*Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)……………………………………………………... 12, 28

*Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)……………….. 28-29

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)…………………………. 25

*Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989)……….. 16

*Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018)…. 26-27

*Glynn v. Cigar Store, Inc.*, Case No. 18-cv-00031-MMC at *8 (N.D. Cal. Jun. 27, 2018)……………………………………………………………………….. 21

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)………………………………… 28-29

*Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)…………….. 30

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)………........... 29

*LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006)………………………………………………………………...…… 12

*ME2 Productions, Inc. v. Pumares,* Civ. No. 1:17-00078 SOM-RLP, Doc. #42, at 14 (D. Haw. Oct. 19, 2017)…………………………………………... 26, 30-31

*Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996)…………….. 29

*Pacific Stock, Inc. v. MacArthur & Company Inc.,* Civil No. 11-00720 JMS/BMK at *R (D. Haw. Sept. 10, 2012)……………………………………………… 21

*Parr v. Club Peggy, Inc.*, 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012)……………………………………………………………………... 16

*Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)………… 20

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987)……………………………………………………………………….. 29

*PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)……………………………………………………………………………... 16

*Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 675 (9th Cir. 2017)…………… 26

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n,* 494 F.3d 788, 794–95 (9th Cir. 2007)… 13

*Sadowski v. Doe,* Civ. No. 1:18-cv-01703-MC at *6 (D. Or. Oct. 30, 2019)…….. 21

*Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D.Cal. 2001)……………………………………………………………....... 19

*Stevens v. CoreLogic,* 899 F.3d 666 (9th Cir. 2018), cert denied, 586 U.S. __ (U.S. Feb. 19, 2019)………………………………………………………………….. 15

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d915, 917–18 (9th Cir. 1987)……. 15, 19

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000)…….... 12

*Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002)…………………... 30

*WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275, 286 (2nd Cir. 2012)………………………. 23

## I.     <u>JURISDICTION AND VENUE</u>

This is an action for permanent injunctive relief and damages against Defendant COREY R. EVANS ("Defendant") for copyright infringement in violation of the United States Copyright Act, 17 U.S.C. 101 §§ et. seq. and violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. 1201 §§ et. seq.

Defendant has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction. As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over him. *See* First Amended Complaint ("FAC") [Doc. # 11] at ¶¶27-29.

This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a). Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a).

## II.     <u>DEFENDANT'S DEFAULT ENTERED</u>

Plaintiff Eve Nevada, LLC (hereinafter "Plaintiff") commenced this action by filing the Complaint [Doc. #1] on November 4, 2020 against Defendants DOES 1-16. Thereafter, Plaintiff ascertained the true identities of many of the DOE Defendants who illegally downloaded and distributed Plaintiff's copyrighted motion picture *Ava* ("Work") by subpoenaing the Internet Service Providers ("ISPs") for the DOE Defendants. [Docs. ##7-8]. Plaintiff's Complaint was amended a first time to

correctly identify known DOE Defendants, including Defendant Corey R. Evans. *See* FAC [Doc. #11].  Plaintiff effected service on Defendant personally on February 27, 2021, making his answer due on March 22, 2021. *See* Fed. R. Civ. P. 12(a)(1)(A); Affidavit of Service [Doc. #25].   When Defendant failed to appear, plead, or otherwise defend, Plaintiff filed a Rule 55(a) request for the entry of default on April 1, 2021 [Doc. # 28], which was granted by the Court.  *See* Entry of Default [Doc. # 33].

## III.   <u>FACTUAL ALLEGATIONS</u>

Plaintiff is a limited liability company registered under the laws of the State of Nevada, has principal offices in Los Angeles, California and owns the copyrights for the motion picture *Ava*. *See* FAC [Doc. #11] at ¶¶6-7; Exhibit "3" to the FAC [Doc. #11-3]. The Work is currently for sale in commerce.  *See Id.* at ¶40. Accordingly, Plaintiff's production and marketing of the motion pictures shares little resemblance to entities hiding in the shadows, buying the copyrights to pornographic films (without creating anything), and seeking settlements from crowds of John Does embarrassed that they were "caught" downloading tawdry titles. *See AF Holdings, LLC v. Does* 1–1058, 752 F.3d 990, 992 (D.C. Cir. 2014) (describing the "modus operandi" of a copyright troll).

Defendant registered for an account on the notorious movie piracy website "RARBG" using his email address and used a BitTorrent Client application to

download torrent files of Plaintiff's Work from the "RARBG" website. *See* FAC [Doc. #11] at ¶¶15, 28-29, 43. Defendant then seeded copies of the Work from his computing device "SAM NOTE20ULTRA 5G SM-N986U1 UNL" and in Hawaii, shared and distributed copies to others. *See Id.*  For example, Defendant was confirmed sharing at least a piece of Plaintiff's Work from three separate Internet Protocol ("IP") addresses in Hawaii over multiple days on or around September 2-5, 2020. *See* Exhibit "1" to the FAC [Doc. #11-1]. Defendant's conduct of reproducing and distributing copies of Plaintiff's exclusive rights in the Work violates Plaintiff's exclusive rights of reproduction and distribution. *See* 17 U.S.C. §§ 106(1), (3). Defendant continued this flagrant conduct despite receiving at least a first notice styled per 17 U.S.C. 512(a) of the DMCA from his ISP Verizon Wireless requesting him to stop infringement of Plaintiff's Work via BitTorrent protocol. *See* FAC [Doc. #11] at ¶10.

There is no question that Defendant—without Plaintiff's authorization or license—knowingly used a BitTorrent client application to download and distribute the Work. *See Id.* at ¶¶100-106; 108-112.  Obtaining Plaintiff's Work required Defendant to take several deliberate steps in order to obtain a viewable version. Defendant had to install the BitTorrent client application onto his computer. *See Id.* at ¶¶53-55.  Defendant had to visit the RARBG website to obtain the torrent files of the Work.  *See Id.* at ¶¶64-65.  Defendant had notice of Plaintiff's copyrights

prominently shown in the Work through the credits indicated in the content of the motion pictures which bore proper copyright notices and through general publication and advertising associated with the motion pictures, which bore proper copyright notices. *See Id*. at ¶¶41-42.  Finally, Defendant was aware that he did not pay for the Work and did not take any steps to obtain a valid copy or license.

Defendant's reproduction and distribution of copies of Plaintiff's Work from all three IP addresses was confirmed to be done with the torrent file name "Ava.2020.WEB-DL.x264-FGT". *See* Exhibit "1" to the FAC [Doc. #11-1]. Labels such as "FGT" are added to file titles to "brand" the quality of piracy files available for download, and further attracts traffic to the movie piracy site "RARBG". *See* FAC [Doc. #11] at    ¶¶83-85. Defendant knew that the movie piracy website "RARBG" from which he obtained his torrent files was distributing illegal copies of the Work and that the Copyright Management Information ("CMI") "FGT" was not the author of Plaintiff's Work. *See Id*. at ¶¶87-90. Thus, Defendant's actions violate 17 U.S.C. § 1202 of the DMCA by knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work, distributing CMI that falsely included the wording "FGT", knowing that the CMI was altered or removed and that it would induce, enable, facilitate, or conceal infringement of the copyright protected Work. *See Id*. at ¶¶114-120.

IV.   **ARGUMENT**

The FAC alleges claims for direct and contributory copyright infringement, in violation of the United States Copyright Act, 17 U.S.C. 101 §§ et. seq., and willfully distributing removed or altered Copyright Management Information ("CMI") in violation of the DMCA, 17 U.S.C. 1201 §§ et. seq.

A.   Copyright Infringements Have Been Established

A plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006).   In the FAC, Plaintiff alleged that it owns the copyrights for the Work and attached evidence of valid Certificates of Copyright Registration numbers issued by the Register of Copyrights.   *See* FAC [Doc. #11] at ¶7, Exhibit "3" to the FAC [Doc. #11-3]. "Registration is *prima facie* evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir.  2000) (citing 17 U.S.C. § 410(c) (1994)).   Moreover, because the factual allegations of the FAC are deemed true, Plaintiff has conclusively established that Defendant infringed upon Plaintiff's copyrights and that his infringements were both knowing and willful. *See* FAC [Doc. #11] at ¶¶98-105.

B.    <u>Contributory Copyright Infringements Have Been Established</u>

The Ninth Circuit has held that "[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 794–95 (9th Cir. 2007). Material contribution exists if the defendant engages in personal conduct that encourages or assists the infringement. *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1019 (9th Cir. 2001).

Here, Defendant installed a BitTorrent Client onto his "SAM NOTE20ULTRA 5G SM-N986U1 UNL computing device" and materially contributed to infringement by participating in a BitTorrent swarm with other users to distribute Plaintiff's Work. *See* FAC [Doc. #11] at ¶¶29, 53-55, 68-74. By using the BitTorrent Client to participate in the BitTorrent swarms with others, Defendant knowingly induced or materially contributed to the infringing conduct of Plaintiff's Work by others.

C.    <u>DMCA Violations have been established</u>

17 U.S.C. § 1202(a)(2) states: "No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement— distribute or import for distribution copyright management information ["CMI"] that is false." 17 U.S.C. § 1202(b)(2)-(3) states: "No person shall, without…authority…(2) distribute or import for distribution [CMI] knowing that the [CMI] has been removed or altered without

authority...or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that [CMI] has been removed or altered without authority...— knowing, or...having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."

To qualify as CMI, the information must be "conveyed in connection with" copies or displays of the work, "including in digital form"; information in a copyright notice can constitute CMI. 17 U.S.C. § 1202(c). Here, the file titles of the digital copies of the Work (modified with "FGT") Defendant distributed, qualifies as CMI as provided by 1202(c). *See* FAC [Doc. #11] at ¶¶83-85.

Plaintiff has established that Defendant meets the dual intent standard of §1202, namely, the Defendant's intent to induce, enable, facilitate, or conceal infringement and knowledge of the CMI as required by section 1202(a) or (b). With respect to 1202(b), the standard is "reasonable grounds to know." 17 U.S.C. § 1202(b). Defendant knew the piracy website "RARBG" from which he obtained his torrent files was distributing illegal copies of Plaintiff's Work. *See* FAC [Doc. #11] at ¶87. Further, Defendant knew his copies were illegal by the unauthorized alteration of CMI to include the wording "FGT". *See Id.* at ¶¶88-95. Defendant knew that the wording "FGT" originated from notorious movie piracy websites such as "RARBG". *See Id.*  Still, Defendant distributed the false CMI with the BitTorrent swarm with the intent to induce, enable, facilitate, or conceal infringement, in

14

violation of 17 U.S.C. § 1202(a)(2). *See Id*. at ¶¶88-95, 114. Defendant also distributed the altered CMI and copies of Plaintiff's Work with the altered CMI knowing it will induce, enable, facilitate, or conceal infringement in violation of 17 U.S.C. § 1202(b)(2)-(3) by the very nature of BitTorrent – this is precisely how Defendant obtained his illegitimate copies. *See Id*. at ¶¶88-95, 115-116. Thus, unlike *Stevens v. CoreLogic*, Plaintiff has established that Defendant demonstrated a "pattern of conduct" (movie piracy) or "modus operandi" (use of a notorious piracy site) that indicates that Defendant knew that the result of his actions would be infringement due to his use of a notorious piracy website. *Stevens v. CoreLogic*, 899 F.3d 666 (9th Cir. 2018), cert denied, 586 U.S. __ (U.S. Feb. 19, 2019).

D.    <u>Default Judgment is Appropriate</u>

Despite being personally served with a copy of the FAC, Defendant has failed to appear.  As a result, Plaintiff requested and received an entry of default [Docs. ## 28, 33].  Because Defendant has chosen to default instead of defending, he has admitted the truth of the allegations asserted in the FAC. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").  While the court may conduct a hearing to determine damages under Fed. R. Civ. P. 55(b)(2), the court may rely on evidence

submitted by Plaintiff.  *See Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38,

40 (2d Cir. 1989).

Plaintiff now respectfully requests that this Court enter a default judgment

against Defendant.  When evaluating whether to grant a judgment by default, courts

consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); *see also Parr v. Club*

*Peggy, Inc.,* 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012).  All of these

factors support the conclusion that Plaintiff is entitled to a default judgment.

1.  *The Possibility of Prejudice to Plaintiff*

Plaintiff would undoubtedly be prejudiced if the Court declines to enter

default judgment, for it would leave Plaintiff without any remedy against Defendant,

who has failed to even show up and contest this dispute. "If Plaintiff['s] motion for

default judgment is not granted, Plaintiff[] will likely be without other recourse for

recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D.

Cal. 2002).  Despite the fact that Defendant doesn't deny that Plaintiff is entitled to

an award of statutory damages, attorneys' fees, costs, and a permanent injunction, if

this Court refuses to enter a default judgment against the Defendant, Plaintiff would be left unable to seek damages.   Indeed, a refusal would entirely frustrate the Copyright Act, the DMCA and the civil justice system.

      2. & 3.  *The Merits of Plaintiff's Substantive Claims and the Sufficiency of the FAC*

      Plaintiff has adequately pleaded its claims for copyright infringement. In the FAC, Plaintiff alleged that it owns the copyrights for the Work, *see* FAC at ¶7, and attached a list of the valid Certificates of Copyright Registration numbers issued by the Register of Copyrights in Exhibit "3" to the FAC.  Moreover, because the factual allegations of the FAC are deemed true, Plaintiff has conclusively established that Defendant infringed upon Plaintiff's copyrights and that his infringement was both knowing and willful. *See* FAC [Doc. #11] at ¶¶102-105, 108-111.

      In *Cobbler Nevada, LLC v. Gonzales,* the Ninth Circuit concluded that a bare allegation that a defendant is the registered subscriber of an IP address associated with infringing activity is not sufficient to state a claim for direct or contributory infringement. *See Cobbler Nevada, LLC v. Gonzales,* 901 F.3d 1142, 1144 (9th Cir. 2018).  In the present case, Plaintiff has pleaded facts that amount to more than a mere allegation that Defendant was the registered subscriber of an IP address. Plaintiff has alleged that Defendant registered for an account with the piracy website "RARBG" using his email address. *See* FAC [Doc. #11] at ¶43. Plaintiff has further

alleged the specific Samsung Tablet device "SAM NOTE20ULTRA 5G SM-N986U1 UNL" on which Defendant installed his BitTorrent Client applications. *See* FAC [Doc. #11] at ¶29. As shown in Exhibit "1" to the FAC, Defendant utilized three separate IP addresses to download torrent files of Plaintiff's Work. The ISP Verizon Wireless has confirmed that the IP addresses were assigned to the Defendant. *See* Declaration of Counsel at ¶4; FAC [Doc. #11] at ¶¶13-14. Moreover, Plaintiff has evidence of the P2P client software used to obtain or share the film on Defendant's specific computing device, and evidence of the file hash SHA1: 3882AE352BDE394F46F41B675E60BB584C0573E (a mathematical function through which a file can be identified with certainty). *See* FAC [Doc. #11] at ¶29; Exhibits "1"-"2" to the FAC [Docs. ##11-1, 11-2]. Finally, Plaintiff has obtained the torrent file name of the movie, the torrent file size, and the exact times of infringement, all of which correspond to the IP addresses assigned to Defendant's ISP account at the time the infringing activity occurred. *See Id.* Further, because Defendant used the Samsung device while connected to his Verizon's cellular Internet service rather than a home Wi-Fi Internet service, it is highly unlikely that a third party was able to obtain the consistent access for the observed activity through hacking or any other means. *See* FAC [Doc. #11] at ¶14.

4. *The Sum of Money at Stake in the Action*

The amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

5. *The Possibility of a Dispute Concerning the Material Facts*

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendant's default, this Court must take the factual allegations asserted in the FAC as true. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Moreover, Defendant has not made any attempt to contest those allegations (or for that matter, even bothered to appear).

6. *Whether the Default was Due to Excusable Neglect*

Defendant's default is not the result of excusable neglect. As discussed above, Defendant was personally served a copy of the FAC. *See* Affidavit of Service [Doc. #25]. Plaintiff's counsel communicated with Defendant by phone requesting that he agree to a time for the Rule 26 conference, but Defendant failed to reply. *See* Decl. of Counsel at ¶¶2-3.

Thus, on several occasions, Defendant has been provided with notice of this proceeding and the risks for failing to appear. Accordingly, Defendant's decision to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal.2001) (reasoning that excusable neglect is not present when Defendant "were properly

served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

### 7. *The Policy Considerations*

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendant's failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiff default judgment. Absent a judgment by default, Plaintiff will not be made whole and has no mechanism to prevent further infringement of its copyright by this same Defendant.  In summary, as demonstrated above, all of the factors weigh in favor of granting Plaintiff a default judgment against Defendant.

## V.   **STATUTORY DAMAGES**

Plaintiff elects to receive statutory damages of $1500 for Defendant's infringements of the respective Work.  Pursuant to 17 U.S.C. § 504(c), "A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of the defendant's profits." *Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Plaintiff is entitled to an award of damages of no less than $750.00 per work and up to $30,000.00 per work for a non-willful violation,

and for a willful infringement, no more than $150,000.00 per work for Defendant's violations of the Copyright Act 17 U.S.C. § 504(c)(1) and (2).

The Defendant reproduced and distributed copies of Plaintiff's Work over multiple IP addresses over multiple days. *See* Exhibit "1" to the FAC [Doc. #11-1]. Despite Defendant's willful actions and the Court's authority to award statutory damages of up to $150,000 for Defendant's willful infringement, Plaintiff seeks only $1500 in statutory damages for the Work from the Defendant.

Plaintiff also elects to receive statutory damages of $2500 for Defendant's CMI violations of the DMCA. Pursuant to 17 U.S.C. § 1203(c)(3)(B), "a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." Courts in the 9th Circuit have awarded a wide range of statutory damages under 17 U.S.C. § 1203(c)(3)(B). *See*, e.g., *Sadowski v. Doe,* Civ. No. 1:18-cv-01703-MC at *6 (D. Or. Oct. 30, 2019) (awarding $2,500 per violation); *Glynn v. Cigar Store, Inc.,* Case No. 18-cv-00031-MMC at *8 (N.D. Cal. Jun. 27, 2018) (awarding $3,500 per violation); *Pacific Stock, Inc. v. MacArthur & Company Inc*., Civil No. 11-00720 JMS/BMK at *R (D. Haw. Sept. 10, 2012) (awarding $10,000 per violation). Despite the Court's authority to award statutory damages of up to $25,000, Plaintiff only seeks the minimum statutory damages of $2,500.

Accordingly, Plaintiff seeks total statutory damages of $4,000.

## VI.   PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

Plaintiff requests that the Court grant its request for injunctive relief, permanently barring Defendant from directly and contributorily infringing Plaintiff's copyrights in the Work.

The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement.  *See* 17 U.S.C. § 502(a)(2) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.") The Copyright Act further provides that "the court may order the destruction. . .of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . ." 17 U.S.C. § 503(b).  A plaintiff is required to satisfy the following four-factor test to obtain a permanent injunction: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015).

Defendant's distribution of Plaintiff's Work is causing Plaintiff irreparable harm by threatening the royalties Plaintiff receives from distribution agreements. Money damages are not adequate to compensate Plaintiff for the loss of control over its Work, the damage to its business goodwill, and the harm to the development of a legitimate online distribution market. *See WPIX, Inc. v. IVI, Inc.*, 691 F.3d, 275, 286 (2nd Cir. 2012) (unrestrained unauthorized Internet retransmissions of broadcast programming "would encourage" other services to follow suit, "weaken plaintiffs' negotiating position," adversely affect "quantity and quality of efforts put into creating" new works, and "drastically change the industry, to plaintiffs' detriment").

The hardship Plaintiff will face if the Court denies Plaintiff injunctive relief greatly outweighs any harm to the Defendant.  That is, the Defendant would suffer no harm from being enjoined from engaging in unlawful conduct. The Ninth Circuit recently reaffirmed the "long-settled principle that harm caused by illegal conduct does not merit significant equitable protection." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017); *see also Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) ("[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration..." (quotations and citations omitted)); *WPIX*, 691 F.3d at 287 ("axiomatic that an

infringer of copyright cannot complain about the loss of ability to offer its infringing product" (quotations and citations omitted)).

"[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming and motion pictures." *Disney Enters., Inc.*, 869 F.3d at 867 (quotations and citations omitted); *see Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005) ("[t]he economic philosophy behind the [Copyright] [C]lause...is the conviction that encouragement of individual effort by personal gain is the best way *to advance public welfare* through the talents of authors and inventors" (emphasis added)).

Due to Defendant's refusal to communicate with Plaintiff's counsel, Plaintiff could not have the Rule 26 conference. *See* Declaration of Counsel at ¶¶2-3. Therefore, Plaintiff was unable to conduct discovery to determine if Defendant is continuing to infringe its Work from different IP addresses and the extent to which Defendant profited from his infringing activity.  Nonetheless, Plaintiff respectfully submits that Defendant's failure to appreciate the seriousness of this proceeding demonstrates that there is a high likelihood of continuing violations of Plaintiff's copyright if Defendant is not enjoined.

Accordingly, unless this Court grants an injunction, Defendant will likely be the source for others to download the Work over and over.  For these reasons,

Plaintiff respectfully requests that the Court grant Plaintiff's injunctive relief prohibiting Defendant from directly and contributorily infringing Plaintiff's copyrighted Work in the future. Additionally, Plaintiff requests that the Court order Defendant to destroy all copies of the Work that he made or used in violation of Plaintiff's copyrights and to refrain from knowingly and willfully using BitTorrent or the Internet for copying or downloading Plaintiff's Work in violation of U.S. copyright law in the future.

## VII.   PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES AND TAXABLE COSTS.

The Copyright Act states that a district court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court has provided the following nonexclusive list of factors for district courts to consider in a making a fee determination under the Copyright Act: (1) frivolousness; (2) motivation; (3) "objective unreasonableness (both in the factual and in the legal components of the case)"; and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). The Ninth Circuit has held that courts may also consider these factors: "[T]he degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious

[litigant].'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)). Furthermore, the Ninth Circuit has "emphasized that district courts should 'accord substantial weight to' the 'reasonableness of [the] losing party's legal and factual arguments.'" *Id.*

Plaintiff asserts that the following factors support granting its motion for attorney's fees: (1) Plaintiff's degree of success in the litigation; (2) deterrence; (3) furtherance of the purposes of the Copyright Act; and (4) the objective unreasonableness of the losing party's litigation conduct.

A.     The Degree of Success in the Litigation

In this case, Plaintiff's suit against Defendant was a total success. Plaintiff alleged that Defendant willfully violated its exclusive rights under the Copyright Act and DMCA. *See* FAC at ¶102-105, 110-111, 120-123.

In *ME2 Productions, Inc. v. Ferdinand Pumares et al.*, this Court concluded that the reasoning of a Magistrate Judge in the Oregon District Case of *Cobbler Nevada, LLC v. Anonymous Users of Popcorn Time: Does 1–1* that the degree of success in BitTorrent copyright infringement cases was minimal because the fees spent to achieve the award were high in proportion to the $750 damage award "makes sense to this court…" *ME2 Productions, Inc. v. Pumares,* Civ. No. 1:17-00078 SOM-RLP, Doc. #42, at 14 (D. Haw. Oct. 19, 2017) (discussing *Cobbler*

26

*Nevada, LLC v. Anonymous Users of Popcorn Time: Does 1–11*, 2016 WL 4238639, at *3 (D. Or. Aug. 10, 2016)). The Court went on to note the number of individuals who had been sued by the Plaintiff. *See Id*.   However, this type of approach was recently criticized by the Ninth Circuit in *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033 (9th Cir. 2018).   Particularly, in *Glacier Films*, the Ninth Circuit characterized the conclusion of the Magistrate Judge – the same Magistrate Judge as in *Cobbler Nevada* – that the degree of success in BitTorrent copyright infringement cases is minimal as "twisting total triumph" and "a flawed premise that mixes and matches actual success with the determination of a reasonable fee award." *Id.* at 1038. Indeed, the Ninth Circuit pointed out that in the contrary they have expressed concern that a "small award for damages," without fees, may be "insufficient to deter future copyright infringements such as the one at issue here." *Id*. at 1039.   Moreover, the Plaintiff should not be punished for enforcing its copyright in the Work against the number of people in this district.   The Ninth Circuit pointed out that "individual cases nonetheless deserve to be judged on their own merits and not saddled with a blanket indictment against peer-to-peer copyright litigation. The sheer volume of suits should not preordain a court's fee determination in any one suit." *Id*. at 1038.

B.     Deterrence

The interest of deterrence weighs in favor of granting Plaintiff's motion for attorney's fees.   Not only did Defendant reproduce Plaintiff's Work without a

license, he also shared copies of the Work with numerous others. *See* FAC at ¶¶28-29. Accordingly, the interest of deterrence weighs in favor of fee-shifting.

C.      The Goals of the Copyright Act

The Copyright Act is intended to "'promote the Progress of Science and useful Arts' by 'assuring authors the right to their original expression' and 'encouraging others to build freely upon the ideas and information conveyed by a work.'" *Feist Publ'ns, Inc.*, 499 U.S. at 349-50 (internal citations omitted). Defendant pirated and distributed Plaintiff's Work. Thus, Defendant's conduct frustrates the goals of the Copyright Act.

D.      Objective Unreasonableness

The objective unreasonableness of Defendant's conduct also supports fee-shifting. Defendant's failure to even participate in the Rule 26 conference prevented Plaintiff from conducting discovery. Further, Defendant's conduct forced Plaintiff to file the present motion for default. The unreasonableness of Defendant's conduct during this litigation supports awarding attorney's fees to Plaintiff.

E.      Calculation of Attorney's Fees

Reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the

litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. See *Fisher*, 214 F.3d at 1119 (citation omitted). The factors the Ninth Circuit articulated in *Kerr* are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. The subsumed factors taken into account in the "lodestar" calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996), and (5) the contingent nature of the fee agreement," *City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992). Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987); *see also Fisher*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiff requests the following lodestar amount for attorneys' fees it incurred in this case as detailed in the attached Declaration of Counsel with regards to Defendant:

| | | |
|---|---|---|
| KERRY CULPEPPER | 13.65 hours @ $250/hour = | $ 3,412.50 |
| JOSHUA LEE (Law Clerk) | 17 hours @ $125/hour = | $ 2,125.00 |
| STEPHANIE KESSNER (Legal Assistant) | 7.4 hours @ $21/hour= | $ 155.40 |

Additionally, Plaintiff seeks to recover the Hawaii General Excise Tax related to those fees in the amount of $268.25 and taxable costs of $505.40.

The taxable costs requested from Defendant include the $402 filing fee for filing the complaint and the $103.40 fee to serve the FAC upon Defendant.

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. *See Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community.  Although attorneys are required to provide evidence that the rate charged is reasonable, *see Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987), this Court is better aware of the prevailing rates in the community, having had the opportunity to review fee requests of many attorneys.  In *ME2 Productions, Inc. v. Pumaras*, this Court determined that a billing rate of $250 for Plaintiff's Counsel was consistent with the

prevailing rates in the community. *See ME2 Productions, Inc. v. Pumares,* Civ. No. 1:17-00078 SOM-RLP at 18.

## VIII.  **CONCLUSION**

Accordingly, Plaintiff respectfully requests that the Court enter default judgment against Defendant and issue an award of statutory damages in favor of Plaintiff Eve Nevada, LLC of $4,000, taxable costs of $505.40, and attorney's fees of $5,961.15.

DATED: Kailua-Kona, Hawaii, April 12, 2021.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff